IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

FILED
FEB 21 2020
Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT ALLEN WORTMAN<br><br>Defendant. | CR 18-47-BLG-SPW<br><br>ORDER DENYING MOTION<br>FOR NEW TRIAL |

After a two-day trial, a jury convicted Defendant Scott Allen Wortman of possession of a firearm in furtherance of a drug trafficking crime. (Docs. 57–58, 60.) Wortman has filed a motion for a new trial. (Doc. 80.) For the following reasons, the Court denies the motion.

## I. Background

A superseding indictment charged Wortman with Count I: Conspiracy to Possess with Intent to Distribute and to Distribute Heroin, Count II: Possession with Intent to Distribute Heroin, Count III: Possession with Intent to Distribute Methamphetamine, and Count IV: Possession of a Firearm in Furtherance of a Drug Trafficking Crime. (Doc. 29.) Immediately before trial, Wortman pleaded guilty to Counts 1, 2, and 3. (Doc. 55.) He proceeded to trial solely on Count 4. (*Id.*)

1

The Government relied on testimony from two witnesses: Detective Patrick Korb and Vania Soriach, a confidential informant. (Doc. 84.) Soriach provided information to the Government about Wortman in exchange for dismissing charges related to her possession of heroin—a fact the Government disclosed to Wortman in advance of trial. (Doc. 90 at 2.)

Detective Korb testified that he began investigating Wortman in early 2018. (Doc. 84, Tr. at 17.) After Soriach completed two successful controlled buys from Wortman, Detective Korb obtained a search warrant for Wortman's residence. (*Id.* at 18–19.) Officers seized drug paraphernalia, a .40 caliber pistol on Wortman's nightstand, and a .45 caliber pistol on Wortman's stove. (*Id.* at 19.) Officers also found $1,600 in cash on Wortman's person and $4,000 in cash in his Ford Mustang. (*Id.* at 20–21.)

Detective Korb testified that Wortman agreed to speak with him and was very forthcoming: he offered to assist with controlled buys in Denver and allowed law enforcement to search his cell phone. (*Id.* at 21–22.) However, after officers obtained a search warrant for Wortman's Facebook messages, they discovered he had reneged on his agreement. He informed his dealer in Denver, "Hey, cops came. They took my guns, they took my money. They know where you live. I would move apartments." (*Id.* at 24.) He also expressed interest in continuing to deal drugs and said, "I'm coming down with cars and guns to sell." (*Id.*) Based on his training and

experience, Detective Korb interpreted this to mean Wortman was trading cars and guns for drugs. (*Id.*)

Detective Korb obtained a warrant for Wortman's arrest. (*Id.* at 24.) He received information that Wortman was staying at a hotel in Billings and proceeded there. Detective Korb found Wortman, arrested him as he was getting into his pickup, and discovered a loaded Ruger .38 pistol in Wortman's pocket during a pat-down search. (*Id.* at 25–28.) Detective Korb also found ten ounces of methamphetamine and drug paraphernalia in Wortman's pickup. (*Id.* at 29–31.) Finally, Detective Korb testified drug dealers would often carry weapons for protection. (*Id.* at 32.)

Vania Soriach testified she agreed to become a confidential informant after she was pulled over and police discovered heroin in her car. (*Id.* at 54.) She told officers her primary supplier was Wortman. (*Id.*) Soriach testified that she purchased heroin from Wortman numerous times. She also knew Wortman carried a handgun with him for protection. On one occasion, he showed it to her and told her he had it to protect himself. (*Id.* at 55–56, 63–64.) Soriach did not see Wortman carrying a pistol during either of the two controlled buys, however. (*Id.* at 57–58.) Soriach also testified her heavy heroin use negated her ability to recall events. (*Id.* at 63–65.)

Ultimately, the jury found Wortman guilty on Count 4. (Doc. 60.)

After trial, the Government disclosed two pieces of information about Soriach that Wortman did not know before trial. First, Soriach had previously acted as a confidential informant in 2016 in a separate case in exchange for avoiding charges related to heroin possession. Second, Soriach acted again as a confidential informant in a separate case after Wortman's arrest in March 2018. (Doc. 90 at 3.) The Government affirms both matters were unrelated to Wortman's case. (Doc. 90 at 4.) When the Government disclosed this information, Wortman moved for a new trial, arguing the Government violated its constitutional duty to disclose exculpatory and impeachment material. (Docs. 80, 81 at 7–8); *see Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

## II. Legal Standard

The Court may grant a defendant's motion for a new trial and vacate any judgment "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Whether to grant or deny a new trial "is within the sound discretion of the district court." *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985). However, "A motion for a new trial is not viewed with favor and should be granted with great caution." *United States v. Miller*, 987 F.2d 1462, 1466 (10th Cir. 1993).

Under *Brady*, the Government has a constitutional duty to disclose material exculpatory evidence. *Brady*, 373 U.S. at 87. Nondisclosure of evidence affecting the credibility of a witness whose testimony "may well be determinative of guilt or

4

innocence" falls under *Brady*. *Giglio*, 405 U.S. at 154. Nevertheless, a new trial is not required "whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . ." *Id.* (internal quotations omitted). The Government violates its constitutional duty to disclose material exculpatory evidence where: "(1) the evidence in question is favorable to the accused in that it is exculpatory or impeachment evidence, (2) the government willfully or inadvertently suppresses this evidence, and (3) prejudice ensues from the suppression (i.e., the evidence is material)." *Jones v. Ryan*, 691 F.3d 1093, 1102 (9th Cir. 2012) (internal quotations omitted).

To satisfy the third prong, the evidence must be material, meaning "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* The defendant bears the burden of establishing that the evidence is material. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing *Bagley*, 473 U.S. at 678). Regarding evidence impacting a witness's credibility, the Court asks (1) "whether . . . there was a reasonable probability that the new evidence would have changed the way in which the jurors viewed [the witness's] testimony," and (2) "whether . . . there was a reasonable probability that

this change would have resulted in a different verdict." *Gonzalez v. Wong*, 667 F.3d 965, 982 (9th Cir. 2011).

## III. Discussion

The first two *Brady* prongs—that the evidence is favorable to Wortman and that it has been suppressed by the Government—have been met. Evidence of Soriach's history of cooperation both before and after Wortman's prosecution would have weighed on the credibility of her testimony. Even though the jury already knew the Government had paid Soriach to set up controlled buys with Wortman, evidence that she had cooperated with the Government in different cases on different occasions was impeachment evidence favorable to the defense. Soriach's history was not disclosed to the defense. The only question is whether it was material.

The Court concludes it was not. The jury already understood Soriach had cooperated with the Government in Wortman's case. It already knew she had charges involving heroin possession dropped in exchange for her cooperation. The potential issue with her credibility—that she may lie in exchange for the benefit of the dismissed charges—was already known. The other cases she was a confidential informant in did not involve Wortman. The fact that Soriach cooperated in Wortman's case weighed far more on her credibility than the fact that she cooperated in separate, unrelated cases. There is not a reasonable probability that the new

evidence of Soriach's history as a confidential informant would have changed the way the jurors viewed her testimony.

As such, there is not a reasonable probability that the new evidence would have resulted in a different verdict. Wortman has failed to show the suppressed evidence was material. A new trial is unwarranted. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for New Trial (Doc. 80) is **DENIED**. The Clerk of Court shall notify counsel of this Order.

DATED this 20th day of February, 2020.

SUSAN P. WATTERS
United States District Judge