IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 18-47-BLG-SPW |
| | CV 22-17-BLG-SPW |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION |
| | AND DENYING CERTIFICATE |
| SCOTT ALLAN WORTMAN, | OF APPEALABILITY |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Scott Allan

Wortman's motion to vacate, set aside, or correct his sentence, pursuant to 28

U.S.C. § 2255.  Wortman is a federal prisoner proceeding pro se.

**I. Preliminary Review**

Before the United States is required to respond, the Court must determine

whether "the motion and the files and records of the case conclusively show that

the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules

Governing Section 2255 Proceedings for the United States District Courts.  A

petitioner "who is able to state facts showing a real possibility of constitutional

error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98

F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases).  But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer."  Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II.  Background

On October 4, 2018, a grand jury handed down a superseding indictment charging Wortman with one count of conspiring to distribute, and possess with intent to distribute, at least one kilogram of heroin, a violation of 21 U.S.C. § 846 (Count 1);  one count of possessing at least one kilogram of heroin with intent to distribute, a violation of 21 U.S.C. § 841(a)(1) (Count 2); one count of possessing at least 50 grams of a substance containing methamphetamine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1) (Count 3); and one count of possessing a firearm in furtherance of the drug trafficking crime alleged in Count 3, a violation of 18 U.S.C. § 924(c)(1)(A) (Count 4).  *See* Superseding Indictment (Doc. 28).

Based on the type and quantity of drugs alleged, Wortman faced a mandatory minimum sentence of ten years to a maximum of life in prison if convicted on Counts 1 or 2 and a mandatory minimum sentence of five years to a

maximum of forty years if convicted on Count 3. *See* 21 U.S.C. § 841(b)(1)(A)(i), (B)(viii).

If convicted on Count 4, Wortman faced a mandatory minimum sentence of five years with a maximum of life, consecutive to any other term imposed. *See* 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii).

Wortman pled guilty without a plea agreement to Counts 1, 2, and 3. He stood trial on Count 4. At the beginning of the plea colloquy, the United States noted for the record that it had attempted to arrive at a plea agreement that would allow Wortman to cooperate and obtain the potential of a sentence below one or more of the mandatory minimum sentences. Wortman rejected its offers. *See* Final Pretrial Conf. and Change of Plea Tr. (Doc. 105) at 4:3–8:14.

Trial commenced at about 1:00 p.m. on May 13, 2019. Two witnesses testified, Billings police detective Patrick Korb and informant Vania Soriach. Korb explained that Wortman had acted as an informant in connection with heroin sales, but their arrangement faltered at some point. Korb later learned that Wortman had returned to dealing heroin and, unexpectedly, also in methamphetamine.[1] He arrested Wortman outside a Super 8 hotel, just as

---

[1] One point should be clarified. Wortman states that Korb testified that "Scott [Wortman] was not known to have guns" and that Korb was "surprised" Wortman had a gun in his pocket when he was arrested. *See* Mot. § 2255 at 3. Korb said the first time he heard Wortman was trafficking in meth was shortly before the arrest, when Soriach told Korb that Wortman had "a ton of meth." That, he said, was unexpected, because he had only known Wortman to deal in heroin. *See* 1 Trial Tr. at 26:7–28:9, 44:1–8, 48:5–17, 50:22–24. Korb did

Wortman was about to get into his vehicle, on March 14, 2018. In his right front pants pocket, Wortman had a Ruger .380 handgun, loaded and with a round in the chamber, "ready to go." *See* 1 Trial Tr. (Doc. 84) at 26:3–28:1. Almost ten ounces of methamphetamine were found inside a backpack in the vehicle. *See id.* at 29:24–30:16. Korb also testified that he had read Facebook messages between Wortman and his supplier in Denver indicating that Wortman would sell firearms in exchange for drugs or to earn money to obtain drugs. *See id.* at 22:22–23:8, 24:3–18.

Soriach testified that she bought a lot of heroin from Wortman and saw him with a gun in "[h]is back belt, pants," on one occasion. She also said he told her he always had a gun with him for protection. *See* 1 Trial Tr. at 55:22–56:22, 63:20–23. Soriach did not see a gun during either of the two controlled purchases of heroin she made from Wortman. *See id.* at 64:23–25.

The jury deliberated for about an hour before returning a guilty verdict. *See* Minutes (Doc. 58); Verdict (Doc. 59).

Before sentencing, Wortman moved for a new trial, based on the prosecution's belated disclosure that Soriach benefited in 2016 from her work as an informant, that she continued to work as an informant against other persons after Wortman was arrested, and that she was paid. *See* Order (Doc. 94) at 4; Br.

---

not say he was surprised to find a firearm in Wortman's possession.

4

in Supp. (Doc. 81) at 2–3.  The Court denied the motion because the jury knew that

Soriach benefited from her testimony against Wortman himself.  Knowledge that

she had received other benefits from cooperating against other defendants would

not change a reasonable juror's assessment of the credibility of Soriach's testimony

against Wortman.  *See id.* at 6–7.

A sentencing hearing took place on April 1, 2020.  The Court found a total

offense level of 27 and a criminal history category of I.  *See* Statement of Reasons

(Doc. 99) at 1 §§ I, III; Presentence Report (Doc. 100) ¶¶ 22–35, 46–47.  The

resulting advisory guideline range would have been 70 to 87 months on the drug

counts, *see* U.S.S.G. ch. 5, Part A (Sentencing Table), but, as explained above,

Counts 1 and 2 carried mandatory minimum sentences of 120 months each,

superseding the guideline range.  *See* U.S.S.G. § 5G1.1(b).  Mandatory minimum

sentences were imposed on each count:  120 months on Counts 1 and 2 and 60

months on Count 3, all concurrent, and 60 months on Count 4, consecutive to

Counts 1–3, for a total prison term of 15 years.  Wortman will serve a five-year

term of supervised release when he completes his prison term.  *See* Judgment (Doc.

98) at 2–3.

Wortman appealed.  He challenged the prosecution's failure to disclose all

impeaching evidence in its possession concerning Soriach's credibility.  He also

contended that the evidence was not sufficient to support his conviction on Count

4. On March 3, 2021, the Court of Appeals rejected his arguments and affirmed his conviction. *See* Mem. (Doc. 108) at 1–3, *United States v. Wortman*, No. 20-30082 (9th Cir. Mar. 3, 2021).

Wortman's conviction became final on June 1, 2021. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion on January 18, 2022. *See* Mot. § 2255 (Doc. 110) at 17; 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

## III.  Claims and Analysis

Wortman claims that counsel's trial performance was ineffective in several respects. His claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Wortman must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

Wortman's claims are reorganized here, but all are addressed.

### A.  Landscape of the Case

Before turning to Wortman's claims, it is important to clarify two matters that are central to the Court's reasoning.

### 1. *Bailey* Does Not Apply to Wortman's Case

First, Wortman argues that he could not be convicted unless the United States had evidence that he actively employed a firearm in a drug trafficking offense. *See* Mot. § 2255 (Doc. 110) at 14–15 (citing *Bailey v. United States*, 516 U.S. 137, 142–43 (1995)). He is mistaken.

Wortman was not charged with using or carrying a firearm during and in relation to drug trafficking. He was charged with possessing a firearm in furtherance of drug trafficking. Congress added the "possession in furtherance" language to the statute in 1998, after *Bailey*, *cited in* Mot. § 2255 at 14, in order to ensure that traffickers could not rely in any way on a firearm to advance or defend their activities.[2]

The jury in Wortman's case was correctly instructed on the elements, *see* Jury Instrs. Nos. 28–30 (Doc. 65 at 31–33), and the United States introduced evidence sufficient to prove the charge, *see* 9th Cir. Mem. (Doc. 108) at 3 ¶ 2. The witnesses' use of words such as "carried" did not alter the elements of the charge. Soriach's testimony that she saw Wortman "carrying" a gun on previous occasions, when he was dealing heroin, only tended to support the United States' argument that the gun Korb found in Wortman's pocket at the time of his arrest was

---

[2] *See, e.g., United States v. O'Brien*, 560 U.S. 218, 232–33 (2010) (describing 1998 legislation colloquially known as "the *Bailey* Fix Act").

possessed in furtherance of drug trafficking.

This fact is closely related to the next point.

### 2. The § 924(c) Charge Related to Count 3

The § 924(c) charge depended on Korb's testimony. Soriach's testimony only corroborated Korb's. That is because the United States alleged Wortman possessed a firearm in furtherance of the drug trafficking offense alleged in Count 3—the methamphetamine charge. *See* Superseding Indictment (Doc. 28) at 3–4 (alleging violation of § 924(c) in connection with Count 3). Soriach did not say she saw Wortman with a gun at the time he committed the offense involving methamphetamine. Only Korb did. For this reason, too, Soriach's testimony—even if the jury believed every word—was not the principal basis for Wortman's conviction.

In effect, Soriach's testimony only showed that Korb's discovery of a loaded, "ready to go" handgun in Wortman's possession, just as he was about to get into a vehicle containing a large quantity of methamphetamine, was not merely fortuitous or coincidental. Most jurors do not need a lot of persuading to find, beyond a reasonable doubt, that someone who has a dealer-sized package of methamphetamine in their vehicle intends to resort to their loaded .380 if any drug user or dealer threatens them or tries to take the meth from them. That is all that is required for conviction under § 924(c).

8

## B. Advice Not to Testify

Wortman contends that counsel unreasonably advised him not to testify. *See* Mot. § 2255 (Doc. 110) at 8–9.

The Ninth Circuit does not recognize claims of ineffective assistance arising from counsel's advice not to testify, even if the defendant alleges that he was not aware he had the right to testify. *See United States v. Nohara*, 3 F.3d 1239, 1243–44 (9th Cir. 1993) (holding that right to testify is waived when defendant does not testify); *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir. 1990) (reasoning that, "if it were possible for defendants to obtain new trials simply by claiming ignorance of the right" to testify, trial courts would be required, at every trial, to advise the defendant of his right to testify). Wortman waived his right to testify. *See Nohara*, 3 F.3d at 1243–44. On that basis, this claim is denied.

In addition, Wortman suggests he could have testified to explain that he "always takes his pistol out of the glove compartment" and into his room when he stays at a hotel, *see* Mot. § 2255 at 2 n.1, and was "an avid gun enthusiast," *id.* at 6 ¶ 6, and "to refute Ms. Soriach's uncorroborated testimony that Scott had a gun on him during a drug trafficking offense," *id.* at 9. He evidently would also have testified that he always wore his shirt untucked, so that Soriach could not have seen a gun in his back belt, and that he only began trafficking in drugs when a work-related injury caused him to become addicted to painkillers and a girlfriend

9

introduced him to heroin. *See id.* at 6 ¶ 8, 7, 14–15 & n.4.

Even if Wortman had so testified, there is no reasonable probability he would have been acquitted. First, as explained above, Soriach's testimony merely corroborated Korb's. Korb's testimony, by itself, was sufficient to prove the charge beyond reasonable doubt. *See* Mem. (Doc. 108) at 3 ¶ 2.

Second, Wortman states in his § 2255 motion that he "always" had a pistol in the glove compartment and carried guns "for protection from our chaotic world full of anarchist and crazy people." Mot. § 2255 at 2 & n.1. Testimony to these facts probably would have made Wortman's conviction even more likely. The prosecution did not have to show that Wortman possessed the firearm *only* to protect himself while engaged in drug trafficking. A reasonable juror could readily conclude that he possessed it to protect himself against people who posed a danger to him—including, even if not limited to, drug traffickers and "wannabes"—and that is enough for conviction. If Wortman had testified that he would *not* use a firearm to protect himself against drug traffickers, such evidence would, if credited, tend to support acquittal. But a reasonable juror would probably not find such testimony credible.

This claim is denied.

## C. Lesser Included Offense

Wortman asserts that counsel should have requested an instruction on a

lesser included offense of possessing a firearm in furtherance of drug trafficking—that is, mere possession of a firearm. *See* Mot. § 2255 at 9. Possessing a firearm generally is not a federal offense.

As Wortman seems to suggest, some individuals, such as unlawful users of controlled substances, do commit a federal offense just by possessing a firearm. And these offenses have a lower penalty range than § 924(c), with no mandatory minimum. *See, e.g.*, 18 U.S.C. §§ 922(g)(3), 924(a)(2)[3] (eff. Oct. 6, 2006); *see also* Mot. § 2255 at 15–16. But that does not mean that offenses under § 922(g) are lesser included offenses of § 924(c).

A lesser included offense is one whose elements are all found within the greater offense. *See, e.g.*, *Schmuck v. United States*, 489 U.S. 705, 716 (1989); *United States v. Kuzma*, 967 F.3d 959, 977 (9th Cir. 2020). Each of the offenses described in § 922(g) requires proof of an element that § 924(c) does not. Under § 922(g)(3), for instance, the United States must prove the defendant is and knows he is an unlawful user of a controlled substance.[4] Section 924(c) does not include either of those elements. And § 924(c) requires proof of an element that §

---

[3] The penalty for violations of § 922(g) is now 15 years maximum, rather than the previous ten, but still with no mandatory minimum. *See* 18 U.S.C. § 924(a)(8).

[4] Section 922(g) requires the United States to prove the defendant knows of the status that makes it illegal for him to possess a firearm. *See Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191, 2194 (2019). Neither § 922(g) nor § 924(c) require the United States to prove the defendant knew he was breaking the law. Wortman's claim to the contrary, *see* Mot. § 2255 at 15–16, is not supportable.

922(g)(3) does not—here, the "in furtherance of drug trafficking" element.

Therefore, § 922(g)(3) and § 924(c) are two separate offenses. Neither is a lesser

included offense of the other. *See Kuzma*, 967 F.3d at 977; *Blockburger v. United*

*States*, 284 U.S. 299, 304 (1932). In fact, a person could be charged, convicted,

and sentenced for violating *both* § 924(c) and § 922(g)(3) without running afoul of

any constitutional or statutory protections against multiple punishments. *Compare*

*Kuzma*, 967 F.3d at 977 (explaining that a person cannot be sentenced for both a

greater offense and a lesser offense included within it).

Counsel did not perform unreasonably by failing to request an instruction on

an offense that is not a lesser-included offense embedded within § 924(c).

Wortman also suffered no prejudice. Neither prong of the *Strickland* test is met.

This claim is denied.

### D.  Impeachment of Soriach

Most of Wortman's motion is focused on Soriach. *See* Mot. § 2255 at 5–6,

7, 10–11, 13–15. He contends that counsel should have done a better job of

impeaching her. He claims counsel should have introduced police reports into

evidence, questioned Soriach concerning receipt of payment for her work as an

informant,[5] pointed out that she had previously said only that she saw Wortman

---

[5] This issue was addressed in Wortman's motion for new trial. *See* Br. in Supp. (Doc. 81) at 3. It falls within the scope of the appellate court's decision on appeal, which found that the United States should have disclosed the information, but its nondisclosure did not affect the

with a firearm in his girlfriend's truck, and contended that Wortman could not carry a gun in his "back belt" because he was too obese to reach around to his back.

The jury knew that Soriach benefitted personally from testifying against Wortman. *See* 1 Trial Tr. at 54:2–22. The jury also knew her memory was vague and not particularly convincing. *See, e.g.*, *id.* at 57:23–58:2, 62:13–63:10, 64:8–14, 65:15–24, 66:17–25. But, as explained above, the jury did not have to depend heavily on Soriach's credibility in order to convict Wortman. Because her testimony played a minor role, additional impeaching information and additional cross-examination designed to undermine her testimony would be very unlikely to lead to an acquittal.

The standard of prejudice applicable to claims of *Brady*/*Giglio* violations is the same as the standard of prejudice applicable to claims of ineffective assistance of counsel: a reasonable probability that the outcome of the proceeding would have been different. *See Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995); *Strickland*, 466 U.S. at 694. On direct review, the Court of Appeals held that additional impeaching information about Soriach would not materially alter the jury's view of her credibility. *See* Mem. at 2–3 ¶ 1. The same applies to Wortman's claim that

---

verdict. But the Court takes the claim as alleging that counsel should have investigated more thoroughly and somehow discovered the additional impeachment evidence himself before trial.

counsel should have cross-examined her more thoroughly.  Additional reasons to doubt her credibility would not materially alter the picture of Soriach presented to the jury at trial.  *See* Mem. (Doc. 108) at 2 ¶ 1.  Thus, even if counsel had done all that Wortman now says he should have, there is no reasonable probability the jury would have acquitted Wortman.

Two of Wortman's points warrant comment.  Counsel could have asked Soriach about her previous report of seeing a gun in Wortman's girlfriend's truck and yet failing to mention the fact in her trial testimony.  Of course, she might have replied, "Oh, yes, I remember that now.  It was on the console between the seats."  And if counsel had asked Soriach how someone as large as Wortman could carry a gun his back belt, she might have said it was just behind his side, not in the middle of his back.  A competent lawyer could have impeached Soriach by raising these points.  But not raising them was well within the wide range of reasonable professional assistance.

Wortman does not allege any fact that counsel unreasonably failed to use to impeach Soriach.  Nor is there a reasonable probability that Wortman would have been acquitted if Soriach had been impeached at greater length or for more reasons.  Neither prong of the *Strickland* test is met.  All claims regarding counsel's impeachment of Soriach are denied.

### E. "Bragging"

Wortman claims that counsel should have objected to prosecutorial misconduct. He alleges that the prosecution misstated the evidence by arguing in closing that Wortman "bragged" about having firearms. Contrary to Wortman's claim, *see* Mot. § 2255 at 3, Soriach did, in fact, use the word. She clarified that she did not think Wortman was trying to look "cool" or impress her, only that he was letting her know he would use a gun to defend himself. *See* 1 Trial Tr. at 56:5–22, 63:24–64:5. Soriach's meaning was not inconsistent with the United States' reference in closing argument. *See* 2 Trial Tr. at 75:5–12. And there is no reasonable probability that Wortman would not have been convicted had the United States, without using the word "bragging," said only that Wortman "wanted to make sure that his customers knew you did not mess with Scott Wortman. Don't try to rip him off, he's got a gun." *Id.* at 75:6–8. The word was immaterial.

Wortman also claims the prosecution introduced "false" evidence when it permitted Soriach to testify that Wortman carried a gun in the back belt of his pants. *See* Mot. § 2255 at 4. He does not explain why the prosecution knew or should have known this testimony was false. As explained above, it could have been true despite Wortman's size. This claim is denied.

### F. Conclusion

Wortman does not identify any act or omission by counsel that was

15

unreasonable. He also does not show a reasonable probability that some item of evidence or some subject of testimony could have led to an acquittal. His claims are denied.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Wortman's allegations do not meet the relatively low threshold required for a COA. He does not identify any respect in which counsel's performance at trial was unreasonable. Nor does he identify any reasonable probability of an acquittal if counsel had done something differently. Wortman pled guilty to possessing methamphetamine with intent to distribute it. A detective arrested Wortman as he was about to get into a vehicle containing almost ten ounces of methamphetamine. In his front pocket, Wortman had a loaded Ruger .380, with a round in the

chamber, "ready to go." Wortman points to nothing counsel could have done to dissuade a reasonable juror from putting two and two together. Reasonable jurists would find no reason to encourage further proceedings after the jury convicted Wortman under § 924(c). A COA is not warranted.

Accordingly, IT IS ORDERED:

1. Wortman's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 110) is DENIED.

2. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Wortman files a Notice of Appeal.

3. The clerk shall ensure that all pending motions in this case and in CV 22-17-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Wortman.

DATED this 30ᵗʰ day of August, 2022.

Susan P. Watters
United States District Court